UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X      Case No. 22-cv-05108

HECTOR MENDEZ, on behalf of himself and all
others similarly situated,

                               Plaintiff,      **CLASS AND COLLECTIVE ACTION COMPLAINT**

        v.

                                      **DEMAND FOR JURY TRIAL**

STELLAR MANAGEMENT LLC D/B/A STELLAR
MANAGEMENT LTD, 3430 BWAY OWNER LLC,
BIRDIE 141 BROADWAY ASSOCIATES, L.L.C.,
600 W 144TH STREET, L.L.C., COB 3420
BROADWAY LLC and LAURENCE GLUCK,

                                Defendants.

-------------------------------------------------------------------X

    Plaintiff HECTOR MENDEZ ("Plaintiff" or "Representative Plaintiff"), by and through his undersigned attorneys, complaining of defendants, Stellar Management LLC d/b/a Stellar Management Ltd ("Stellar Mgmt."), 3430 Bway Owner LLC ("3430 Bway"), Birdie 141 Broadway Associates, L.L.C. ("Birdie 141"), 600 W 144th Street, L.L.C. ("600 W 144th St LLC"), COB 3420 Broadway LLC ("3420 BLLC") and Laurence Gluck ("Gluck"), jointly and severally (collectively, "Defendants"), alleges:

## <u>INTRODUCTION</u>

**Summary of Plaintiff's Claims, the Proposed Collective and the Proposed Class:**

    1.    Plaintiff brings this complaint against Defendants on behalf of himself and all other persons similarly situated who are, were, or will be employed by Defendants as superintendents, porters and handymen and/or in similar manual labor positions at Defendants' residential, commercial and mix-used buildings (the "Stellar Buildings") in New York that were (and continue to be) owned, operated, and controlled by Defendants as a unified enterprise within the applicable statutory periods.

2.     Plaintiff brings his First Cause of Action for Defendants' failure to pay overtime wages required by the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, *et seq.* (the First Cause of Action) on his own behalf and on behalf of a proposed collective of superintendents (the "Proposed FLSA Collective") who are, were or will be employed at Defendants' approximately 80 apartment buildings in New York between June 16, 2019 and the date of final judgment.

3.     Plaintiff brings his Second through Sixth Causes of Action for Defendants' violations of the New York Labor Law ("NYLL") (the "NYLL Claims"). Defendants violated the NYLL by, *inter alia*, failing to: (a) pay overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week; (b) properly pay wages on a timely basis as required by NYLL § 191(1)(a); (c) provide wage notices required by NYLL § 195(1); and (d) provide wage notices and wage statements required by NYLL, Article 6, §§195(1) and 195(3).

4.     Plaintiff brings the NYLL Claims on his own behalf and on behalf of a proposed Rule 23 Class (the NYLL Class) of all superintendents, porters, handymen, construction personnel and other manual workers who are, were or will be employed at any building owned, operated, managed and/or controlled by Defendants in New York between June 16, 2016 and the date of final judgment.  Upon information and belief, there are more than one hundred members of the proposed NYLL Class.

**The Stellar Enterprise:**

5.     At all relevant times, Defendants operated (and they continue to operate) as a unified and centrally-controlled real estate enterprise (the "Stellar Enterprise").

6.     From its executive office in Manhattan (currently, 44 West 28th Street), the Stellar Enterprise owns, controls and operates apartment buildings and commercial properties in the New York metropolitan area, including at least 80 New York City apartment and/or

mixed-use buildings. A substantial portion of the Stellar Enterprise's New York City apartment buildings and mixed-use properties are located in low-income neighborhoods in Upper Manhattan and the Bronx.

7.     Upon information and belief, the Stellar Enterprise employed 300 or more workers during the applicable limitations periods; has annual revenues exceeding $40,000,000.00; and owns and/or controls approximately 25,000 apartment units, of which the vast majority are located in New York, particularly in Upper Manhattan and the Bronx.

8.      The Stellar Enterprise was founded by Gluck and, at all relevant times, it functioned, and continues to function, under the ownership, direction and control of Gluck.

9.     Although the Stellar Enterprise's buildings are nominally titled in the names of various limited liability companies, these title-holding entities are under the ultimate control of Gluck, who is the principal and/or most senior officer of these entities.

10.     Personnel at all levels of the Stellar Enterprise, including Plaintiff, were, and are, regularly assigned tasks and responsibilities whereby they perform work involving multiple properties. For example, property managers are assigned to oversee groups of buildings. Similarly, superintendents are regularly assigned to perform work at multiple buildings.

11.     On Defendants' LinkedIn page, Defendants emphasize the vertically-integrated structure of the Stellar Enterprise, stating:

> The vertical integration of management, development and ownership is a central tenet of the firm's investment and management philosophy and enables Stellar to quality control every step of the design, development and execution process. With a fully integrated real estate platform, Stellar is able to provide stakeholders accountability across the many facets of real estate investment. For this, Stellar has cultivated a well-respected reputation in the industry.

https://www.linkedin.com/company/stellar-management/ (accessed on June 7, 2022).

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction of this action pursuant to the provisions of the FLSA, 29 U.S.C. §§ 201 *et seq*., including under 29 U.S.C. §§ 207, 216, and 217. This Court also has jurisdiction in light of the existence of a controversy arising under the laws of the United States (28 U.S.C. §1331), diversity jurisdiction under 28 U.S.C. §1332, and supplemental jurisdiction to consider claims arising under New York state law, pursuant to 28 U.S.C. §1367, because these claims are so related to the FLSA claims that they form part of the same case or controversy.

13.     Venue as to Defendants is proper in this judicial district, pursuant to 28 U.S.C. §1391. Defendants transact business and have agents in the Southern District and are otherwise within this Court's jurisdiction for purposes of service of process. Defendants operate facilities and employed Plaintiff in this judicial district, namely in New York County.

14.     This Court has personal jurisdiction over the Defendants, pursuant to New York Civil Practice Law and Rules § 301, in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiff within the State of New York and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the law of the State of New York, and accordingly may be served with process pursuant to Rule 4(h)(1), Fed.R.Civ.P.

## THE PARTIES

**Plaintiff:**

15.     Plaintiff is an adult, natural person who resides in Greenville County, South Carolina.

16.     Plaintiff was hired by Defendants during the fall of 2018, to work as a porter of Defendants' mixed-use building located at 556 West 140th Street, New York, New York

("556 West 140th"), which has approximately forty-nine (49) apartment units, as well as multiple, ground-floor retail stores.

17.     After approximately two months, Plaintiff became the superintendent of 556 West 140th.  Plaintiff remained in his superintendent position through on or about July 13, 2021, when Plaintiff suffered a serious on-the-job injury.

18.     During his employment with Defendants, Plaintiff was also dispatched to perform work at other apartment and/or mixed use buildings owned and controlled by Defendants, including, but not limited to, Defendants' buildings located at 561 West 141st Street, New York, New York ("561 West 141st"), 3513 Broadway, New York, New York ("3513 Broadway"), 561 West 141st Street ("561 West 141st"), and 3420-3428 Broadway a/k/a 571 West 139th Street, New York, New York ("3420-3428 Broadway").

**Defendants:**

Stellar Mgmt.

19.     Upon information and belief, and at all times herein relevant, Stellar Mgmt. is a New York limited liability company with a principal executive office at 44 West 28th Street, Sixth Floor, New York, New York 10001.

20.     Upon information and belief, during time periods relevant to this complaint, Stellar Mgmt. also had a principal executive office at 156 William Street, Tenth Floor, New York, New York 10038.

21.     At times herein relevant, Stellar Mgmt. has interchangeably held itself out as Stellar Management LLC and Stellar Management Ltd.

22.     For example, Defendants issued wage statements to Plaintiff that identified Plaintiff's employer as "Stellar Management Ltd."

23.    Upon information and belief, Defendants' use of the name "Stellar Management Ltd." is unauthorized insofar as no such entity was validly formed in New York or anywhere else.

24.    Stellar Mgmt., together with the title-holding and other entities comprising the Stellar Enterprise, describe themselves as a single, integrated enterprise that owns, controls and operates "over 12,000 apartments in 100 buildings in New York City and Miami." https://www.stellarmanagement.com/no-fee-NYC-rentals/real-estate-developer/company (accessed on June 15, 2022).   Upon information and belief, approximately 80 of the Stellar Enterprise's foregoing buildings are located in New York, particularly in Upper Manhattan and the Bronx.

25.    Upon information and belief, at all times relevant to this proceeding, the Stellar Enterprise designated Stellar Mgmt. as the management company and/or managing agent responsible for managing its approximately eighty (80) buildings in New York City, alone.

3430 Bway.

26.    Upon information and belief, 3430 Bway is a New York corporation doing business in New York County, New York, with an executive office at 44 West 28th Street, Sixth Floor, New York, New York 10001.

27.    Upon information and belief, during time periods relevant to this complaint, 3430 Bway also had an executive office 156 William Street, Tenth Floor, New York, New York 10038.

28.    Upon information and belief, 3430 Bway is the title owner of 556 West 140th, where Plaintiff performed work as Defendants' employee.

Birdie 141.

29.     Upon information and belief, Birdie 141 is a New York corporation doing business in New York County, New York, with an executive office at 44 West 28th Street, Sixth Floor, New York, New York 10001.

30.     Upon information and belief, Birdie 141 is the entity that nominally holds title to 561 West 141st Street, where Plaintiff was dispatched to perform work as Defendants' employee.

31.     Upon information and belief, Gluck is the principal and/or most senior officer of Birdie 141, and Birdie 141 is among the various title-holding entities through which the Stellar Enterprise owns, operates and controls its approximately 80 buildings in New York City.

32.     For example, according to New York City's Automated City Register Information System, on or about March 29, 2022, Adam Roman, the Stellar Enterprise's Chief Operating Officer, executed a mortgage on behalf of Birdie 141.   According to the New York City Department of Housing Preservation and Development's (HPD) Summary Registration Report for 561 West 141st Street, Gluck is the head officer of Birdie 141; Stellar Mgmt. is the building's managing agent; and Birdie 141 and Stellar Mgmt. share the same address, to wit: 44 West 28th Street, New York, New York.

600 W 144th St LLC.

33.     Upon information and belief, 600 W 144th St LLC is a New York corporation doing business in New York County, New York, with an executive office at 44 West 28th Street, Sixth Floor, New York, New York 10001.

34.     Upon information and belief, 600 W 144th St LLC is the entity that was formed and is operated by Gluck to nominally hold title to 3513 Broadway, where Plaintiff was dispatched to perform work as Defendants' employee.

35.     Upon information and belief, 600 W 144th St LLC is owned and controlled by Gluck.

36.     Upon information and belief, Gluck is the most senior officer, as well as a principal of, 600 W 144th St LLC.

3420 BLLC.

37.     Upon information and belief, 3420 BLLC is a New York corporation doing business in New York County, New York, with an executive office at 44 West 28th Street, Sixth Floor, New York, New York 10001.

38.      Upon information and belief, 3420 BLLC is the entity that nominally holds title to 3420-3428 Broadway, where Plaintiff was dispatched to perform work as an employee of Defendants.

39.     Upon information and belief, 3420 BLLC is owned and controlled by Gluck.

40.     Upon information and belief, Gluck is the most senior officer and a principal of 3420 BLLC.

Gluck.

41.     Upon information and belief, Gluck is an adult natural person who has residences in Suffolk and New York Counties, New York.

42.     Gluck is an individual engaging in (or who was engaged in) business within this judicial district during the relevant time period.

43.     Upon information and belief, Gluck has an office for the conduct of business at 44 West 28th Street, Sixth Floor, New York, New York 10001.

44.     Upon information and belief, at all relevant times, Gluck was, and he continues to be, the principal and/or most senior executive of 3430 Bway.

45.     Upon information and belief, at all relevant times, Gluck was, and he continues to be, the principal and/or most senior executive of Stellar Mgmt., and he controls the Stellar Enterprise's eighty or more apartment buildings in New York City.

46.     Hundreds of mortgages, deeds, HPD registrations, court filings and other records identify Gluck as the principal and/or most senior officer of the entities that comprise the Stellar Enterprise.

47.     Gluck possesses or possessed operational control over the defendant corporations, ownership interests in the defendant corporations, and he controlled significant functions of the Stellar Enterprise.  In this capacity, upon information and belief, Gluck determined the business, personnel and wage practices of the Stellar Enterprise, and he had the authority to hire and fire employees, including Plaintiff.

## FACTUAL ALLEGATIONS

**The Stellar Enterprise Functions as an Integrated Real Estate Enterprise under Gluck's Ownership and Control**

48.     At all relevant times, Defendants functioned, and continue to function, as an integrated real estate enterprise, with common management, control, personnel policies, ownership, and inextricably intertwined operations and functioning, all for the purpose of operating residential, mixed-use and commercial buildings.

49.     Plaintiff is informed and believes that at all relevant times, the Stellar Enterprise functioned in a unified manner:

(a) Ultimate control of the Stellar Enterprise's buildings is exercised by Gluck;

(b) Though the Stellar Enterprise's buildings are nominally titled in different corporate names, Gluck has substantial ownership interests in these entities;

(c) Buildings of the Stellar Enterprise are centrally managed; and

(d) The Stellar Enterprise issues uniform personnel policies and directives to its maintenance personnel, either through its field managers or other managerial personnel.

50.     According to the Stellar Enterprise's website, "Stellar's portfolio contains over 12,000 apartments in 100 buildings in New York City and Miami." https://www.stellarmanagement.com/no-fee-NYC-rentals/real-estate-developer/company (accessed on June 15, 2022).

51.     Defendants emphasize that their extensive residential and commercial portfolios in New York are intertwined. They promote and advertise their residential and commercial availabilities on the same website. With respect to their commercial properties in New York, Defendants aver, "Stellar Management owns and manages more than two million feet of commercial real estate space in prime New York City locations, including Midtown, SoHo, Chelsea, Flatiron, Upper Manhattan, and Long Island City.  Stellar Management's large residential portfolio includes a number of mixed-use developments across the city which further expands our footprint of ground floor commercial/retail." https://www.stellarmanagement.com/no-fee-NYC-rentals/real-estate-developer/commercial-properties (accessed on June 15, 2022).

52.     Regarding Gluck's leadership of and control over the Stellar Enterprise, the Stellar Enterprise states on its website, "Mr. Gluck continues to lead Stellar Management, emphasizing tenant satisfaction, clear communication, and diligent service." https://www.stellarmanagement.com/no-fee-NYC-rentals/real-estate-developer/history (accessed on June 15, 2022).

53.     From their principal executive office in Manhattan (previously, 156 William Street; now, 44 West 28th Street), Defendants supervise superintendents, porters and handymen performing work at the Stellar Enterprise's buildings throughout New York City.

54.     For example, Stellar Enterprise's managers, Anderson Santos and Ramses Capellan, were (and are) managing agents of dozens of Stellar Buildings located in Upper Manhattan, and they managed, and continue to manage, superintendents, porters and other manual workers who perform work at these buildings.

55.     Similarly, upon information and belief, another Stellar Enterprise manager and agent, Smajlje Srdanovic, oversees Defendants' residential and mixed-use buildings throughout Upper Manhattan and the Bronx and handles personnel matters relating to superintendents at properties throughout these neighborhoods.

56.     Defendants have applied common employment practices, policies and procedures to superintendents, porters and handymen, including, *inter alia*, their practices of: paying these workers bi-weekly in violation of NYLL § 191(1)(a), which requires weekly payment of manual workers; failing to pay residential superintendents overtime pay at 1.5 times their regular rates of pay for substantial portions, if not all, of the overtime hours they work; failing to provide these workers with wage notices at the time of hiring.

57.     As described herein, Defendants also knowingly engaged in unlawful business practices by requiring Plaintiff and similarly situated residential superintendents to work numerous hours of overtime on a weekly basis without overtime compensation that Defendants were obligated to pay under the FLSA and NYLL; failing to pay wages within the time periods and intervals required by NYLL § 191(1)(a); illegally deducting sums from paychecks; and failing to provide wage notices and wage statements required by NYLL.

**Interstate Commerce**

58.     At all relevant times hereto, Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d).  Defendants employed Plaintiff as a porter and, subsequently, a superintendent.  These employment positions engaged Plaintiff in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1). At all

times relevant hereto, Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

59.     Among other forms of interstate activities, Defendants operate the Stellar Buildings through the extensive use and handling of goods and materials, such as cleaning supplies, paint, tools, and similar items, all of which travelled in interstate commerce, and Plaintiff personally used such materials in performing his daily job duties.

60.     Notably, the Stellar Enterprise owns, manages and controls buildings in multiple states, including, according to its website, New York, Florida, Illinois and California.

61.     At all times applicable herein and upon information and belief, Defendants' operation and control of the Stellar Buildings involved extensive business dealings with mortgage companies, banks, insurance companies, vendors, and other service providers both within and outside the State of New York.

62.     At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA and all other statutes referred to in this Complaint.

63.     At all relevant times, Defendants employed Plaintiff within the meaning of the NYLL, §§ 2 and 651(5) and (6).

64.     Upon information and belief, at all relevant times, Defendants had gross revenues in excess of $500,000.00.

65.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay building maintenance employees by the same method, and share control over employees.

66.     Each Defendant possessed substantial control over the policies and practices over Plaintiff's working conditions and the working conditions of similarly situated superintendents, porters and handymen.

67.     Defendants jointly employed Plaintiff and are Plaintiff's employer within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

68.     In the alternative, Defendants constitute a single employer of Plaintiff and similarly situated superintendents, porters and handymen.

### Collective and Class Action Allegations

### The Proposed FLSA Collective.

69.     Pursuant to  29 U.S.C. 207 & 216(b), Plaintiff brings his FLSA overtime claim, the First Cause of Action, on behalf of himself and a Proposed FLSA Collective consisting of:

> All persons who work or have worked as superintendents at buildings owned, managed and/or controlled by Defendants in New York between June 17, 2019 and the date of final judgment in this matter (the "Collective Action Members").

70.     A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were not exempt from the FLSA's overtime provisions, and they were subjected to Defendants' practice of not paying legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

71.     Plaintiff and the Collective Action Members have substantially similar job duties and are paid pursuant to similar, if not the same, payment structure.

### NYLL Class Action Allegations.

72.      Plaintiff brings the Second through Sixth Causes of Action, the NYLL Claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of persons consisting of:

> All persons who work or have worked as manual workers, including but not limited to superintendents, porters and handymen, at buildings in New York that were owned, managed and/or controlled by Defendants between June 17, 2016 and the date of final judgment in this matter.

13

73.     The members of the NYLL Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

74.     There are more than one hundred members of the NYLL Class.

75.     Plaintiff's claims are typical of those claims that could be alleged by any member of the NYLL Class, and the relief sought is typical of the relief which would be sought by each member of the NYLL Class.

76.     Plaintiff and the NYLL Class have been injured in that were compensated in an untimely manner due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected everyone in the NYLL Class similarly, and Defendants profited from the same type of unfair and/or wrongful acts as to each member of the NYLL Class.

77.     Plaintiff is able to fairly and adequately protect the interests of the NYLL Class and has no interests antagonistic to the NYLL Class.

78.     Plaintiff is represented by attorneys who are experienced and competent in both class and collective action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases, particularly in cases that, as here, involve claims of superintendents and building maintenance workers.

79.     A class action is superior to other available methods of fair and adjudication of NYLL Claims, particularly because many of the putative members of the NYLL Class do not speak English, are unlikely to be familiar with their rights under the NYLL, may be fearful of suffering retaliation if they commence a lawsuit, and may not the financial resources to vigorously pursue a lawsuit.

80.    Common questions of law and fact exist as to the NYLL Class that predominate over any questions only affecting Plaintiff and/or each member of the NYLL Class individually and include, but are not limited to, the following:

(a)  whether Defendants compensated Plaintiff and the NYLL Class on a timely basis;

(b)  whether Defendants furnished Plaintiff and the NYLL Class with accurate wage notices and wage statements as required by the NYLL;

(c)   whether Defendants paid the NYLL Class premium overtime compensation for all hours worked above forty in a workweek; and

(d)  whether Defendants reimbursed for out-of-pocket expenses they incurred to acquire tools of the trade.

**Factual Allegations Relating to Plaintiff's Wage Claims:**

81.    Plaintiff first began working for Defendants in approximately September 2018, when he was hired to work as the porter of 556 West 140th.

82.    After approximately two months, Defendants elevated Plaintiff to the position of superintendent of 556 West 140th.

83.    Throughout his employment with Defendants, Plaintiff was also dispatched to perform work at various other Stellar Buildings in Manhattan, including at least four other buildings in Upper Manhattan.

84.    Upon being promoted to the position of superintendent, Defendants initially paid Plaintiff $20.00 per hour for his first forty (40) hours of work per week and $30.00 per hour for some, but not all, of his overtime hours (*i.e.*, hours worked above the first forty (40) per week).

85.    However, commencing in or about February 2019, when Plaintiff moved into a superintendent's apartment at 556 West 140th, Defendants willfully ceased paying premium overtime compensation to Plaintiff, even though Plaintiff continued to work an average of approximately sixty-four (64) hours per workweek.

86.    Instead, Defendants typically paid Plaintiff $800.00 per week, regardless of the number of overtime hours he worked.  These payments covered only the first forty (40) hours that Plaintiff worked per week.  The sole exception was in certain instances when Plaintiff had to address emergencies. The foregoing practice had the effect of, *inter alia*, denying Plaintiff any compensation for the substantial number of overtime hours he worked on weekends as part of his regular, day-to-day duties.

87.    When Plaintiff complained, his manager informed him that Defendants, as a matter policy and procedure, did not pay overtime to live-in superintendents except in extremely limited circumstances.

88.    Plaintiff's   duties at 556 West 140th involved virtually all aspects of maintenance, including removal of trash and recyclables, painting, plastering, sheetrock, light electrical work, roof maintenance/repair, interacting with contractors and tenants, accepting deliveries of materials, addressing leaks, shoveling snow, cleaning surface areas, collecting rent from tenants, and being on-call at all hours.

89.    Tenants communicated with Plaintiff at all hours of the day and night.

90.    Plaintiff regularly worked 64 or more hours per week, typically as follows: Monday through Friday from approximately 7:00 a.m. to 5:00 p.m.; and Saturdays and Sundays: from approximately 8:00 a.m. to 3:00 p.m.

91.    In addition, Plaintiff was required to be on-call and handle tenant requests at all hours, which entailed work hours that were far in excess of his foregoing regular schedule.

92.    Solely by way of example, during his final year of employment, Plaintiff spent a large portion of a weekend addressing a leak from a fifth-floor apartment at 556 West 140th that spread to three lower floors.

93.     The foregoing are conservative estimates of Plaintiff's schedule, particularly because Plaintiff was on-call, and he was regularly called upon to perform work after hours.

94.     At all relevant times, Defendants were aware that Plaintiff's job responsibilities involved working extensive hours on weekends and evenings.  Indeed, they initially paid overtime to Plaintiff for 12 or more overtime hours per week.

95.     Defendants willfully failed and refused to generate and keep accurate records of the days and times that Plaintiff and other residential superintendents worked, in violation of 29 U.S.C. § 211(c), 29 CFR § 516.2, and NYLL §  195.

## AS AND FOR A FIRST CAUSE OF ACTION
### FLSA Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.*
### (On Behalf of Plaintiff and the FLSA Collective)

96.     Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

97.     As described above, Plaintiff worked in excess of forty hours in a workweek.

98.     As described above, Defendants did not properly compensate Plaintiff for all hours he worked in excess of forty in a workweek, as required by the FLSA.

99.     Plaintiff is informed and believes, and thereon alleges, that Defendants have required, or require, the FLSA Class Members as part of their employment to work without additional compensation, such as overtime, in excess of the forty hours per week maximum under 29 U.S.C. § 207(a)(1).  That Section provides the following:

> Except as otherwise provided in this section, no employer shall employ any of his employees...for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate which is not less than one and one-half times the regular rate at which he is employed.

100.     Indeed, in the performance of their duties for Defendants, members of the FLSA Class routinely worked substantially more than forty (40) hours per week, yet did not receive overtime compensation for the work, labor and services they provided to Defendants,

as required by the FLSA, 29 U.S.C. §§ 206 and 207.  The precise number of unpaid overtime hours will be proven at trial.

101.    Plaintiff proposes to undertake appropriate proceedings to have such FLSA Class Members aggrieved by Defendants' unlawful conduct notified of the pendency of this action and join this action as Plaintiffs, pursuant to 29 U.S.C. § 216(b), by filing written consents to joinder with the Court.

102.    Defendants' overtime violations of the FLSA were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

103.    Defendants have a policy and practice of refusing to pay overtime compensation to Plaintiff and other superintendents

104.    As a result of the foregoing, Plaintiff seeks judgment against Defendants on his own behalf, and on behalf of those FLSA Class Members similarly situated who file written consents to joinder in this action, for all unpaid wages, including minimum wage and overtime wages owed by Defendants to Plaintiff and the FLSA Class, pursuant to 29 U.S.C. §§ 206 and 207, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

### AS AND FOR A SECOND CAUSE OF ACTION
**New York Labor Law – Overtime Wages**
**(On Behalf of Plaintiff and the New York Class – FRCP Rule 23)**

105.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

106.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs, with the same force and effect, as if fully alleged herein.

107.    Defendants employed Plaintiff and other superintendents for workweeks longer than forty (40) hours and willfully failed to compensate them for the time worked in

excess of forty (40) hours per week, at a rate of less than one and one-half (1 and ½) times the regular hourly rate, in violation of the requirements of the NYLL.

108.    By the course of conduct set forth above, Defendants have violated N.Y. Lab. Law § 650, et seq.; 12 N.Y.C.R.R. § 142-2.2.

109.    Defendants have a policy and practice of refusing to pay overtime compensation to Superintendents and other building maintenance personnel.

110.    As a consequence of the willful underpayment of wages, alleged above, Plaintiff and members of the New York Class have incurred damages thereby and the Defendants are indebted to them in the amount of unpaid overtime compensation and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper, including but not limited to liquidated damages, interest and attorneys' fees.

### AS AND FOR A THIRD CAUSE OF ACTION
**NYLL § 191(1)(a) – Late Payment of Wages**
**(On Behalf of Plaintiff and the New York Class – FRCP Rule 23)**

111.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

112.    During his employment, nearly all of Plaintiff's duties involved physical labor.

113.    Defendants failed to pay Plaintiff within the time period and intervals required by NYLL § 191(1)(a), and instead paid Plaintiff and members of the NYLL Class on a bi-weekly basis. Defendants did not cease this unlawful practice until approximately late May, 2020.

114.    NYLL § 191 allows a manual worker to bring a civil action for delayed payment of wages, even if the wages have been subsequently paid.

115.   NYLL § 198(1-a) expressly provides a private right of action, including a claim for liquidated damages, for a violation of NYLL § 191.f

116.   Untimely payment of wages is particularly harmful to manual workers, like Plaintiff, who rely on their wages for sustenance.

117.   The provisions of NYLL § 191 requiring the timely payment of wages, and the applicable supporting regulations, applied to Defendants and protect Plaintiff and members of the NYLL Class. Consequently, Defendants were required to pay Plaintiff and members of the NYLL Class weekly and not later than seven calendar days after the end of the week in which wages were earned.

118.   Instead of paying Plaintiff and members of the NYLL Class on a weekly basis for work, Defendants unlawfully required Plaintiff and members of the NYLL Class to wait, and, instead, remitted paychecks every two weeks.

119.   Due to Defendants' violations of NYLL § 191(1)(a), Plaintiff and members of the NYLL Class are entitled to recover from Defendants the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

### AS AND FOR A FOURTH CAUSE OF ACTION
**NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements**
**Violation of NYLL § 195(3)**
**(On behalf of Plaintiff and the NYLL Class)**

120.   Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

121.   The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid.

122.   Defendants willfully failed to provide Plaintiff and NYLL Class Members with wage statements at the end of every pay period that correctly identified the name of the employer; address of employer; rates of pay or basis thereof; regular hourly rate; whether

paid by the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; and such other information as required by NYLL § 195(3).

123. Due to Defendants' violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover from Defendants per employee liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

## AS AND FOR A FIFTH CAUSE OF ACTION
### NYLL Wage Theft Prevention Act (WTPA) – Failure to Provide Wage Notices
### Violation of NYLL § 195(1); Statutory Damages NYLL § 198
### (On behalf of Plaintiff and the NYLL Class)

124. Plaintiff incorporates by reference in this cause of action the prior allegations of this Complaint as if fully alleged herein.

125. The NYLL and WTPA, as well as the NYLL's interpretative wage orders, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

126. Defendants willfully failed to furnish Plaintiff, at the time of hiring or when there was a change to his rate of pay, with wage notices required by NYLL § 195(1).

127. Because the WTPA was in effect when Plaintiff commenced his employment with Defendants, Plaintiff is entitled to bring this private cause of action for statutory damages for Defendants' failure to provide Plaintiff with a legally valid wage notice when Defendants first became Plaintiff's employer.

128. Due to Defendants' violation of NYLL § 195(1), Plaintiff and the NYLL Class are entitled to recover from Defendants $50.00 per work day that the violations occurred or continue to occur, up to $5,000.00, together with reasonable attorneys' fees, and costs of this action, pursuant to the NYLL § 198(1-b).

## AS AND FOR A SIXTH CAUSE OF ACTION
**Unlawful Deductions from Wages/Wage Theft**
**(On Behalf of Plaintiff and the NYLL Class)**

129.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

130.    In violation of the New York Labor Law, Article 19, § 193, Defendants unlawfully deducted wages from Plaintiff by requiring Plaintiff and members of the NYLL Class to spend their own money on work-related expenses, including tools of the trade to complete mandated work.  This further reduced Plaintiff's wages below the amounts required by the NYLL and FLSA.

131.    Among other tools of the trade that Plaintiff was required to purchase from his own funds, Plaintiff purchased a drill and leaf blower.  Plaintiff was not reimbursed for these expenditures.

132.    As a result of the foregoing, Plaintiff seeks judgment against Defendants on his own behalf, and on behalf of the NYLL Class, for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper

### RELIEF SOUGHT

**WHEREFORE,** Plaintiff, Hector Mendez, on behalf of himself and members of the FLSA Collective and NYLL Class, respectfully requests that this Honorable Court:

1.    Designate this action as a collective action on behalf of the FLSA Class members and order the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 28 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the FLSA Collective Members.

2.      Designate Plaintiff as representative of the FLSA Collective.

3.      Designate Plaintiff's counsel as counsel for the FLSA Collective.

4.      Certify this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the NYLL Class members.

5.      Appoint Plaintiff as representative of the NYLL Class.

6.      Appoint Plaintiff's counsel as Class Counsel for the NYLL Class.

7.      Toll the statutes of limitations.

8.      Declare, adjudge and decree that Defendants willfully violated the overtime wage provisions of the FLSA as to the Plaintiff and the FLSA Collective.

9.      Declare, adjudge and decree that Defendants willfully violated their legal duties to pay overtime compensation as required under the NYLL as to Plaintiff and the New York Class.

10.     Award Plaintiff and all those similarly situated actual damages for unpaid wages and liquidated damages equal to the unpaid wages found due to Plaintiff and the proposed FLSA Collective as provided by the FLSA, 29 U.S.C. § 216(b);

11.     Award Plaintiff and all those similarly situated attorneys' fees, costs (including expert fees), and disbursements as provided by the FLSA, 29 U.S.C. § 216(b).

12.     Award Plaintiff and the NYLL Class actual damages for unpaid wages, liquidated damages, statutory damages, penalties, attorneys' fees, costs, and interest, as provided under New York law.

13.     Award Plaintiff and the NYLL Class liquidated damages pursuant to the NYLL for all wages not paid on a timely basis.

14.     Award Plaintiff and the NYLL Class reimbursement for all unlawful deductions.

15.     Award Plaintiff and the NYLL Class of statutory damages for Defendants' failure to provide accurate wage statements pursuant to NYLL § 198(1-d).

16.     Award Plaintiff and the NYLL Class statutory damages for Defendants' failure to provide proper and/or accurate wage notices pursuant to NYLL § 198(1-b).

17.     Award reasonable attorneys' fees and costs of the action.

18.     Such other relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by jury on all issues so triable.

 Dated:  New York, New York
          June 17, 2022

Respectfully submitted,

RAPAPORT LAW FIRM, PLLC


                        */s/ Marc A. Rapaport*
By:     _____
        Marc A. Rapaport
        80  Eighth Avenue, Suite 206
        New York, New York 10011
        Ph: (212) 382-1600
        mrapaport@rapaportlaw.com

        and

        MILLER LAW, PLLC


                        */s/ Meredith R. Miller*
By:     _____
        Meredith R. Miller
        167 Madison Avenue, Suite 503
        New York, NY  10016
        Ph: (347) 878-2587
        meredith@millerlaw.nyc

        *Attorneys for Plaintiff, the Putative*
        *Collective, and Putative Class*